**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PHILLIP CANNELLA,                  :
JOANN SMALL, and                   :
FIRST SENIOR FINANCIAL             :
GROUP, LLC.                        :
                                   :    CIVIL ACTION
          Plaintiffs,              :
                                   :
     vs.                           :
                                   :    NO. 2:12-CV-1247
KRISTA C. BRENNAN,                 :
HARRY MCWILLIAMS, and              :
GRANITE FINANCIAL                  :
SOLUTIONS, INC.                    :
                                   :
          Defendants.              :

## MEMORANDUM AND ORDER

**Joyner, J.**                                   **August 5, 2014**

Before the Court are Defendants Harry McWilliams and Granite
Financial Solutions, LLC's ("Granite Financial")(collectively
"Moving Defendants") Motion to Dismiss ("Motion")(Doc. No. 171)
and Plaintiffs' Response in opposition thereto (Doc. No. 174).
For the reasons set forth in this Memorandum, the Court grants in
part and denies in part the Moving Defendants' motion.

### I. Factual and Procedural History

Briefly, the original complaint was filed on March 9, 2012
by Plaintiffs First Senior Financial Group, LLC ("First Senior"),
Phillip Cannella, and Joann Small (collectively "Plaintiffs")
against "Watchdog," an anonymous internet blogger and a Doe
defendant. (Doc. No. 1). Plaintiffs filed an amended complaint on

July 31, 2012 which included nine (9) Doe defendants along with
Defendant "Watchdog." (Doc. No. 9). After extensive
investigations into the identities of "Watchdog" and the Doe
defendants, and various discovery and evidentiary disputes,
Plaintiffs filed a Second Amended Complaint on March 17, 2014.
(Doc. No. 156). The Second Amended Complaint identifies
"Watchdog" as Krista C. Brennan and the Doe defendants as Harry
McWilliams and Granite Financial Solutions, LLC. (collectively
"Defendants")(Id.).

This action arises from Defendants' alleged posting of false
and misleading information about Plaintiffs on Defendants'
website. (Second Amended Complaint, ¶ 25 (Doc. No. 156)).
Plaintiff First Senior is an insurance agency that provides
financial information and insurance products to customers. (Id.
at ¶ 10). Plaintiffs Cannella and Small are employees of
Plaintiff First Senior and work directly with customers to
provide financial information and promote First Senior and its
insurance products. (Id. at ¶¶ 2-3, and 13).

Plaintiffs allege that Defendant Brennan created the
websites [www.TruthaboutCannella.com](http://www.TruthaboutCannella.com) and
[www.TruthaboutCannella.net](http://www.TruthaboutCannella.net) (collectively referred to as "the
website") for the primary purpose of disseminating false and
misleading statements about Plaintiffs and their services. (Id.
at ¶¶ 23, 24 and 30). Plaintiffs assert that Granite Financial,

2

who is a direct competitor of First Senior, and Defendant McWilliams, an employee of Granite Financial, conspired, planned and executed with Defendant Brennan to launch the website. (<u>Id.</u> at ¶¶ 16, 17, 25 and 27). Plaintiffs allege that for almost two years, Defendants McWilliams and Brennan intentionally posted false, deceptive and harmful information with the intention of harming Plaintiffs' business and encouraging Plaintiffs' potential and existing clients to engage in business with the Moving Defendants. (<u>Id.</u> at ¶¶ 27 and 31). Plaintiffs assert that in view of Defendants' false and misleading statements, Plaintiffs have lost business, customers/clients, and significant revenue. (<u>Id.</u> at ¶¶ 50-57).

Plaintiffs assert violations of Section 43(a) of the Lanham Act, 15 U.S.C § 1125, tortious interference with contractual relationships, tortious interference with prospective relationships, civil conspiracy, and unfair competition against the Moving Defendants.[1] The Moving Defendants have filed a Rule 12(b)(6) motion to dismiss all the claims against themselves. (Motion, p. 18 (Doc. No. 171)). The Court grants in part and denies in part the Moving Defendants' motion.

---

[1] Plaintiffs have alleged the same allegations and causes of action against Defendant Brennan except they allege she was contributorily liable for encouraging and inducing the Moving Defendants to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits the Court to dismiss a complaint that does not meet the minimum pleading requirements by "fail[ing] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The standard of review for a Rule 12(b)(6) Motion to Dismiss requires that the complaint be read in the light most favorable to the plaintiff, taking all well-pleaded, material allegations in the complaint as true. Estelle v. Gamble, 429 U.S. 97, 99 (1976).

"A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element," and that a claim to relief is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

However, the Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's Rule 8 obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. 544, 555 (rejecting previous liberal

standard of 12(b)(6) review in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009), quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667 (2009).

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 555 U.S. at 563. At this stage, the Court will construe the facts in Plaintiffs' Second Amended Complaint regarding its Lanham Act claims as true and in the light most favorable to the Plaintiffs, drawing reasonable inferences in Plaintiffs' favor. <u>See</u> <u>Fowler</u>, 578 F.3d at 210.

### III. Discussion

A.   <u>Plaintiffs' Lanham Act Claims (Count I)</u>.

The Moving Defendants assert that Plaintiffs' Lanham Act claims should be dismissed as the claims are barred by the statute of limitations, or alternatively, the claims fail to contain sufficient factual matter. (Motion, pp. 11 and 16 (Doc. No. 171)). Moving Defendants' arguments are unpersuasive and the Court denies their motion to dismiss the Plaintiffs' Lanham Act claims.

1. <u>Statute of Limitations.</u>

Plaintiffs' Lanham Act claims are not barred by the statute of limitations. Section 43(a) of the Lanham Act does not contain an express statutory period under which plaintiffs may bring claims and "[i]nstead, the Act subjects all claims to 'the principles of equity.'" <u>Santana Products, Inc. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123, 135 (3d Cir. 2005)(quoting 15 U.S.C. § 1117(a)). To determine the applicable statute of limitations, the district court must look to the analogous state law where the district court sits. <u>See</u> <u>Island Insteel Sys., Inc. v. Waters</u>, 296 F.3d 200, 206 (3d Cir. 2002); <u>see generally</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."). Under Pennsylvania law, the six-year "catch all" statute of limitations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 <u>et seq.</u>, is most analogous to Lanham Act violations. <u>See</u> <u>Santana</u>, 401 F.3d at 137 ("The UTPCPL is the most analogous state cause of action that would encompass all claims brought under § 43(a) of the Lanham Act.").[2]

_____

[2] In <u>Santana</u>, the court dismissed plaintiff's claim under the doctrine of laches as the plaintiff knew of defendants' alleged Lanham Act violations seven (7) years prior to filing

Under the UTPCPL, methods of unfair competition and/or deceptive practices are defined in a number of ways, including "[d]isparaging the goods, services or business of another by false or misleading representations of fact." Santana, 401 F.3d at 136 (citing 73 Pa. Stat. Ann. § 201-2(4)(viii)). In Santana, plaintiff Santana alleged a Section 43(a) Lanham Act violation against defendant Bobrick for engaging in an unlawful marketing campaign and false advertising. Id. at 128. The parties were competitors in the business of manufacturing toilet partitions which were installed in public buildings such as government offices and schools. Id. at 127. Plaintiff Santana asserted that defendant Bobrick had unlawfully attempted to persuade architects against using Santana's toilet partitions by misleading them into believing that Santana's products were a fire hazard under safety codes. Id. at 125-26. Defendant Bobrick argued that plaintiff Santana's Section 43(a) claims were essentially a fraud claim and thus, Pennsylvania's two-year statute of limitations for fraud claims should apply. Id. at 135. The court disagreed, and held that claims under Section 43(a) are more analogous to the UTPCPL, 73 Pa. Stat. Ann. § 201-2(4), as the UTPCPL would be able to encompass all actions under Section 43(a) of the Lanham Act.

---

suit. 401 F.3d at 138-139. The court held that the six-year statute of limitations for the plaintiff's claim had expired and the plaintiff had inexcusably delayed in bringing its Lanham Act claims. Id. at 140. In the present case, Plaintiffs are within the six-year time period.

Therefore, the court held that a six-year statute of limitations period should be applied. Id. at 137.

Similarly to Santana, where the parties were competitors, Plaintiffs and Defendant Granite Financial are competitors in the financial investment market in the greater Philadelphia area. In addition, Plaintiffs allege that the Moving Defendants have made false and misleading statements to persuade Plaintiffs' customers and potential customers from doing business with Plaintiffs. Thus, Plaintiffs' claims under Section 43(a) are analogous to claims made under UTPCPL, 73 Pa. Stat. Ann. § 201-2(4), which has a six-year statute of limitations. Therefore, Plaintiffs' Section 43(a) claims under the Lanham Act are subject to a six-year limitations period.

The Moving Defendants argue that the Court should treat Plaintiffs' Section 43(a) Lanham Act claim as a defamation claim since the Plaintiffs' claims are defamatory in nature. (Motion, p. 30 (Doc. No. 171)). According to the Moving Defendants, under Pennsylvania law, 42 Pa. C.S.A. § 5523 (2014), defamation claims have a one (1) year statue of limitations period, and thus Plaintiffs' claims should be barred as untimely. (Id. at pp. 28-29, and 33).

False advertising claims under Section 43(a) and defamation claims can be considered together due to the substantial overlap in facts required for both. See e.g., NTP Marble, Inc. v. AAA

8

<u>Hellenic Marble, Inc.</u>, No. 09-CV-05783, 2012 WL 607975, at *6
(E.D. Pa. Feb. 27, 2012). Defamation is a statement that harms
the reputation of another and deters others from associating or
dealing with him or her. <u>Am. Bd. of Internal Medicine v. Von
Muller</u>, No. 10-CV-2680, 2011 WL 857337, at *8 (E.D. Pa. Mar. 10,
2011). Relatedly, Section 43(a) claims deal with "commercial
defamation," as evidenced by the legislative history of Section
43(a):

> By allowing the amended § 43(a)(2) to function as
> a vehicle for commercial defamation .... and trade
> libel .... Section 43(a) now provides a kind of
> commercial defamation action, the reach of the
> section specifically extends only to false and
> misleading speech that is encompassed within the
> 'commercial speech' doctrine by the United States
> Supreme Court.

<u>Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense
Bd.</u>, 919 F. Supp. 756, 764-65 (D.N.J. 1996) (citing 134 Cong.Rec.
H10420 (daily ed. Oct. 19, 1988) (remarks of Rep. Kastenmeier).[3]

The Supreme Court has defined commercial speech as an
"expression related solely to the economic interests of the
speaker and its audience." <u>Central Hudson Gas & Electric Corp. v.
Public Service Comm'n of New York</u>, 447 U.S. 557, 561 (1980).
Defamation lacks the commercial aspect of Section 43(a) claims

---

[3] <u>Coll. Sav. Bank</u> addressed the effect of 1st Amendment
protection on Plaintiff's Lanham Act claim. That is not at issue
in the present matter.

and instead focuses on libelous injuries. See Coll. Sav. Bank, 919 F. Supp. at 766.

Moreover, false and misleading negative comments about the plaintiff's business posted on an internet website, may be properly brought under Section 43(a). See NTP, 2012 WL 607975, at *7. In NTP, the parties were competitors in the marble and granite installation business. Id. at *1. Plaintiff alleged that defendants were posting negative reviews about the plaintiff's business on internet websites which Plaintiff believed would negatively affect its business. Id. Plaintiff filed a Section 43(a) Lanham Act, false advertising action against defendants. Id. The court denied defendants' motion for summary judgment reasoning that defendants' statements were disseminated over the internet, warned customers that plaintiff's quality of work was poor, and suggested customers take their business elsewhere. Id. at *7.

Like the plaintiff in NTP, Plaintiffs have alleged that the Moving Defendants have posted false or misleading statements about the Plaintiffs and their business on the website which has negatively affected Plaintiffs' business.(Second Amended Complaint, ¶¶ 25, 42 and 50-54 (Doc. No. 156)). Moreover, Plaintiffs have asserted economic harm, not injury solely to reputation: they allege that the Moving Defendants' intention was to harm Plaintiffs' business and benefit the Defendants'

business. (Id. at ¶¶ 24, 25, 27, 29, 42 and 50). Therefore, Plaintiffs have properly brought a claim under Section 43(a) of the Lanham Act for false advertising, to which a six-year statute of limitations should apply.

Moreover, the Moving Defendants' argument is unpersuasive as they rely on Cornelius v. Deluca, 709 F. Supp. 2d 1003 (D. Idaho 2010)[4] and Bedi Photographic Corp. v. Polaroid Corp., 1980 U.S. Dist. LEXIS 15629 (E.D. Pa. Aug. 11, 1980)(The court held that Plaintiffs' Section 1125(a) claims should have a one year statute of limitations in accordance with Pennsylvania's libel or slander law, 42 Pa. C.S.A. § 5523 (1979)). The Bedi Photographic Corp. opinion has been criticized for not convincingly analyzing the issue as the Lanham Act is designed to prohibit fraud and not libel or slander in advertising. Monkelis v. Scientific Sys. Servs., 653 F. Supp. 680, 684 (W.D. Pa. 1987)(The court held that the appropriate statute of limitations was six-years for Section 43(a) violations).

Plaintiffs' Second Amended Complaint was filed on March 17, 2014. (Doc. No. 156). Plaintiffs allege, and the Moving

---

[4] As the Moving Defendants assert, the Court is required to look toward analogous state law where the district court sits for the law regarding the statute of limitations period. (Motion, pp. 28-29 (Doc. No. 171)). Therefore, the Court sees very little value in a Ninth Circuit opinion interpreting Missouri law, especially in view of the Third Circuit's holding in Santana, 401 F.3d at 137.

Defendants do not dispute, that the alleged false and misleading statements by the Moving Defendants had to occur on or after January 2011 (the date the website was launched). Therefore, Plaintiffs' Lanham Act claims against the Moving Defendants have been filed well within the six-year statutory period.

2.   Merits of Plaintiffs' Lanham Act Claim.

Plaintiffs' pleadings sufficiently allege a Section 43(a) violation of the Lanham Act against the Moving Defendants. Section 43(a) provides that:

> Any person who, on or in connection with any goods or services .... uses in commerce any .... false or misleading representation of fact, which .... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities .... of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> 15 U.S.C. § 1125(a)(1)(B).

To assert a false advertising claim under Section 43(a) of the Lanham Act, plaintiff must demonstrate: (1) that the defendant has made false or misleading statements; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that

there is a likelihood of injury to the plaintiff. <u>Ditri v.
Coldwell Banker</u>, 954 F.2d 869, 872 (3d Cir. 1992) (citing <u>U.S.
Healthcare, Inc. v. Blue Cross of Gr. Philadelphia</u>, 898 F.2d 914,
922-23 (3d Cir. 1990).

The Moving Defendants argue that Plaintiffs have failed to
sufficiently plead a Section 43(a) Lanham Act claim as (1)
Plaintiffs have not pled a "false claim;" (2) Plaintiffs failed
to plead that the Moving Defendants' activities were undertaken
"in commerce;" (3) Plaintiffs failed to plead that the Moving
Defendants' statements were "commercial advertising or
promotion;" and (4) Plaintiffs failed to plead that their damages
were causally related to the Moving Defendants' conduct. (Motion,
pp. 36-37 (Doc. No. 171)). The Moving Defendants' motion to
dismiss the Lanham Act violations will be denied.

### a.    <u>False or Misleading Claims.</u>

Plaintiffs have pled facts that sufficiently demonstrate
that the Moving Defendants' statements were false or misleading.
Section 43(a) of the Lanham Act was enacted to promote honesty
and fair play in the commercial context and "to stop the kind of
unfair competition that consists of lying about goods or
services." <u>See</u> <u>Castrol Inc., v. Pennzoil Co.</u>, 987 F.2d 939, 941
(3d. Cir. 1993). For Plaintiffs to establish liability under
Section 43(a), they must demonstrate that the Moving Defendants'

statements were either literally false or literally true or ambiguous, but had the tendency to deceive consumers. Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002); accord Castrol, 987 F.2d at 943.

A literal false statement must be unambiguous and can either be false explicitly or through implication when considering the advertisement in its entirety. NTP Marble, Inc. v. AAA Hellenic Marble, Inc., 799 F. Supp. 2d 446, 451 (E.D. Pa. 2011) (citing Novartis, 290 F.3d at 586-87). A determination of literal falsity rests on an analysis of the message in context. Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

If a plaintiff cannot show the statements were literally false, plaintiff has the burden to demonstrate that the statements were ambiguous and actually deceived its consumers. QVC Inc. v. Your Vitamins Inc., 439 F. App'x 165, 168 (3d Cir. 2011). To carry plaintiff's burden, a plaintiff may not merely assert that consumers "could" be deceived, but must plead actual deception. See Castrol, 987 F.2d at 943. Additionally, opinions are not actionable, and only statements of fact capable of being proven false and/or verifiable are actionable under the Lanham Act. Robert Bosch LLC v. Pylon Mfg. Corp., 632 F. Supp. 2d 362, 366 (D. Del. 2009).

Moving Defendants point to four (4) specific statements that Plaintiffs have identified as made by Defendant McWilliams:

> (a) "They take every shortcut in financial planning they can certainly, why wouldn't they take shortcuts for cosmetic vain purposes too? Speaks to character ... or lack thereof."
>
> (b) "These are the days Cannella is most dangerous. His game is fear peddling. He motivates people to buy from him through creating and fostering fear."
>
> (c) "999am [sic] is willingly embracing a known criminal as an advertiser who continues to abuse elderly victims."
>
> (d) "I wouldn't put it past old Slippery Phil, Captain Crash Proof if he showed the agents one app and filed another to get them off of the application and so he KNOWS he doesn't to pay them."

(Motion, p. 38 (Doc. No. 171); citing Second Amended Complaint, ¶ 42 (Doc. No. 156)).

Moving Defendants argue that these four (4) statements are "opinion" and not factual and therefore Plaintiffs have failed to plead that Moving Defendants have made false or misleading statements. (Motion, p. 38 (Doc. No. 171)).

The court finds that Plaintiffs have alleged at least some statements that are explicitly factual and are capable of being verified. For example, Defendant McWilliams allegedly stated that Plaintiffs take "shortcuts" in the financial planning business and that Plaintiff Cannella[5] is a "known criminal" who "abuse[s]

---

[5] The Court notes that Defendant McWilliams' alleged statement does not specifically state who is the "known criminal" who "continues to abuse elderly victims." However, since the

15

elderly victims." (Second Amended Complaint, ¶ 42((a) and (d))
(Doc. No. 156)). These statements are not opinion and are capable
of being verified. Plaintiffs have the ability to challenge
whether they take "shortcuts" or whether Plaintiff Cannella is a
"known criminal" who "abuses elderly victims." Plaintiffs have
met their burden in pleading a false or misleading statement.

Even assuming that these four (4) statements allegedly made
by Defendant McWilliams are ambiguous and not literally false,
Plaintiffs have still met their burden by pleading consumer
deception. Plaintiffs pled that Defendant McWilliams' false or
misleading statements, including the four (4) above, were made in
an effort to disparage potential customers and business contacts
from engaging in business with Plaintiffs. (Second Amended
Complaint, ¶ 42 (Doc. No. 156)). In addition, Plaintiffs have
asserted that in view of the false and misleading statements made
by Defendants, prospective customers cancelled appointments with
Plaintiffs and that existing clients terminated contracts with
Plaintiffs. (Id. at ¶¶ 54-55). Therefore, Plaintiffs have pled
both actual consumer deception and a false or misleading
statement made by the Moving Defendants.

---

statement was posted on a website called
www.TruthaboutCannella.com, the context of the alleged statements
and the factual allegations in the Second Amended Complaint make
it plausible that the statement is referring to Plaintiff
Cannella.

b.    Commerce.

Plaintiffs have properly pled facts that satisfy the interstate commerce requirement under Section 43(a) of the Lanham Act. To assert a Lanham Act claim, the false and misleading misrepresentation of fact must be made in interstate commerce. Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 165 (3d Cir. 2001)(citing 15 U.S.C. § 1125(a)(1)(B)). The commerce requirement in the Lanham Act has been interpreted to confer broad jurisdictional powers upon courts in the United States. NTP, 799 F. Supp. at 451 (citing Highmark, 276 F.3d at 165). Commerce in the Lanham Act refers to "all commerce which may lawfully be regulated by Congress." Id. (quoting 15 U.S.C. § 1127). When the allegedly false or misleading statement is accessible through the internet and might have an impact on parties outside the state, the interstate commerce requirement has been satisfied. See NTP, 799 F. Supp. 2d at 451.

Plaintiffs have pled that the Moving Defendants' false and misleading statements were posted on a website. (Second Amended Complaint, ¶ 42 (Doc. No. 156)). Plaintiffs assert that the website could be accessed worldwide. (Id. at ¶ 29). Additionally, Plaintiffs assert that the website had a live Twitter feed in order to extend the public's access to the website. (Id. at ¶ 28). Therefore, Plaintiffs' pleading meets the interstate commerce requirements of the Lanham Act.

c.    <u>Commercial Advertising.</u>

The Moving Defendants' alleged statements meet the commercial advertising requirements under the Lanham Act. The Lanham Act requires that false or misleading statements of fact be made in commercial advertising or promotion. <u>See</u> 15 U.S.C. § 1125(a)(1)(B). "[A] message is commercial advertising if it is commercial speech disseminated to the purchasing public made by a party in commercial competition with another to influence customers to buy one party's goods or services over the others." <u>NTP</u>, 2012 WL 607975, at *7 (citing <u>ZS Associates, Inc. v. Synygy, Inc.</u>, No. 10-CV-4274, 2011 WL 2038513, at *7 (E.D. Pa. May 23, 2011)).

Factors to determine whether speech is commercial include whether (1) the speech is an advertisement; (2) the speech refers to a specific product or service; and (3) the speaker has an economic motivation for the speech. <u>Id.</u> (citing <u>U.S. Healthcare, Inc.</u>, 898 F.2d at 933). An affirmative answer to each question indicates "strong support" for the conclusion that the speech is commercial. <u>In re Orthopedic Bone Screw Prods. Liab. Litig.</u>, 193 F.3d 781, 793-94 (3d Cir. 1999).

Commercial speech is "broadly defined as an expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for

18

the sale of goods and services." <u>In re Orthopedic Bone Screw</u> <u>Prods. Liab. Litig.</u>, 193 F.3d at 793 (quoting <u>U.S. Healthcare,</u> <u>Inc.</u>, 898 F.2d at 933). The content of the statements is the most significant factor, and statements "related solely to the economic interests of the speaker and its audience" are indications of "commercial speech." <u>See</u> <u>City of Cincinnati v.</u> <u>Discovery Network, Inc.</u>, 507 U.S. 410, 422 (1993).

Plaintiffs have pled that the Moving Defendants and Defendant Brennan utilized the website to execute their own personal vendetta against Plaintiffs and their products. (Second Amended Complaint, ¶ 31 (Doc. No. 156)). Plaintiffs have asserted that the Moving Defendants and Defendant Brennan conspired, planned and executed the launch of the website to damage Plaintiffs' reputation and in turn attract Plaintiffs' clients. (<u>Id.</u> at ¶¶ 25-26). The Moving Defendants allegedly posted over one hundred statements on the website, including four (4) specific disparaging statements about the Plaintiffs' business. (<u>Id.</u> at ¶ 42). Moreover, the Moving Defendants' statements were allegedly posted to criticize the Plaintiffs and the financial planning services they offer. (<u>Id.</u> at ¶¶ 24-27 and 42). Additionally, the parties here are allegedly commercial competitors and Plaintiffs have asserted that its success in 2009 and 2010 motivated the Moving Defendants and Defendant Brennan to

post disparaging statements about the Plaintiffs. (Id. at ¶¶ 16-17, 26-27, 42 and 50).

In addition, Plaintiffs have alleged that false or misleading statements have been disseminated to the purchasing public through the website. (Id. at ¶¶ 28-31). The website was accessible world-wide and was the first result to appear in a Google search for "Phil Cannella," "Joann Small," or "First Senior." (Id. at ¶¶ 29 and 53). Also, Plaintiffs allege that existing and potential customers of Plaintiffs read the contents of the website, including Moving Defendants' postings, and as a result cancelled their business relationship with Plaintiffs. (Id. at ¶¶ 42 and 54-57).

In view of the Plaintiffs' pleadings, the Court finds that Plaintiffs have met the requirements to demonstrate commercial advertising. The website at issue was created to disparage Plaintiffs and their business. The Moving Defendants' goal in posting on the website was to encourage Plaintiffs' customers and potential customers to do business with Defendants instead of the Plaintiffs. Indeed, Defendant McWilliams alleged postings on the website suggested that Plaintiffs "take every shortcut," lack "character," and are "known criminal[s]" who "abuse elderly victims." Accordingly, the Court finds the Moving Defendants' alleged postings on the website constitute commercial speech

done "for the purpose of influencing consumers to buy the [Defendants'] goods or services." See ZS Associates, Inc., 2011 WL 2038513, at * 7 (citing Caldon, Inc. v. Advanced Measurement & Analysis Grp., Inc., 515 F. Supp. 2d 565, 578 (W.D. Pa. 2007)).[6]

d. Damages.

Plaintiffs have sufficiently pled that they have been damaged by the Moving Defendants' allegedly false statements. Section 43(a) of the Lanham Act provides that a defendant "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged" by defendant's false statement. 15 U.S.C. § 1125(a)(1)(B). Plaintiffs have met their burden by alleging that the Moving Defendants posted over one hundred statements on the website, including four (4) specific disparaging statements about Plaintiffs' business. (Second Amended Complaint, ¶ 42 (Doc. No. 156)). In addition, Plaintiffs assert that in view of the disparaging statements on the website, Plaintiffs' existing and potential customers have terminated

---

[6] The Moving Defendants' argument that the alleged postings on the website were an isolated act is unpersuasive. The Moving Defendants rely on Consulnet Computing, Inc. v. Moore, No. 04-CV-3485, 2007 WL 2702446, at *11-12 (E.D. Pa. Sept. 12, 2007); however, Consulnet involved a defendant who made one single stray remark to another person, and the plaintiff brought a Lanham Act claim based solely on that single remark. Id. at *12. Here, Plaintiffs have pled that the Moving Defendants made over one hundred statements which were posted on the website, and disseminated all over the internet for the public to see and access.

their business relationships with Plaintiffs. (Id. at ¶ 55).
Plaintiffs assert that at least 30-50 customers have cited the
website as a reason to cancel their business relationship with
Plaintiffs. (Id. at ¶ 54). Plaintiffs allege that they have lost
between $20 to $30 million dollars in revenue because of the
website. (Id. at ¶ 57). While the Moving Defendants argue that
there is no allegation that the four statements specifically
attributable to Defendant McWilliams caused the damages, the
Court may draw the reasonable inference, at this early stage of
the proceeding,[7] that Defendant McWilliams' contributions to the
website caused, at least in part, the client cancellations and
subsequent loss of revenue alleged by Plaintiffs. Therefore,
Plaintiffs have pled facts supporting their assertion of damages
caused by the Moving Defendants' false and misleading statements.

    B.   <u>Plaintiffs' Tortious Interference Claims (Counts III
and IV).</u>

Plaintiffs have asserted claims against the Moving
Defendants for tortious interference with contractual
relationships and prospective business relationships. Moving
Defendants argue that Plaintiffs' tortious interference claims
are untimely as the claims have been brought outside the statute
of limitations period. Alternatively, Moving Defendants argue

---

[7] See Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at
662).

that Plaintiffs have failed to meet the pleading requirements and therefore, the tortious interference claims should be dismissed.

    1.   <u>Statute of Limitations.</u>

Under Pennsylvania law, 42 Pa. Cons.Stat. § 5524, tortious interference claims generally have a two year statute of limitations period. <u>CGB Occupational Therapy, Inc. v. RHA/Pennsylvania Nursing Homes, Inc.</u>, No. 00-CV-4918, 2001 WL 1549824, at *3 (E.D. Pa. Dec. 5, 2001). However, Moving Defendants argue that Plaintiffs' claims should be considered defamation claims under 42 Pa. Cons.Stat. § 5523 (1), which applies a one year statute of limitations period for claims based on defamatory statements. For the following reasons, the Court finds that Plaintiffs' claims are governed by a two-year statue of limitations period, and that they are timely.

In considering Plaintiffs' claims, the Court finds instructive the Pennsylvania Superior Court's decisions in <u>Evans v. Philadelphia Newspapers, Inc.</u>, 601 A.2d 330, 334 (Pa. Super. Ct. 1991) and <u>Maverick Steel Co., LLC v. Dick Corp./Barton Marlow</u>, 54 A.3d 352, 357-58 (Pa. Super. Ct. 2012). In <u>Evans</u>, the appellants brought claims of tortious interference, defamation, and conspiracy against a newspaper that had engaged in a campaign of unfair and prejudicial news reporting regarding the African-American community which injured the appellants. <u>Id.</u> at 331. In

23

particular, the appellants asserted that the newspaper knowingly or recklessly published an article that contained false statements about a local youth education program. Id. at 331-32. Noting that the tortious interference and defamations claims were based upon "identical allegations," id. at 333, the court held that the appellants "should not be able to circumvent the statute of limitations by merely terming the claim tortious interference when in essence it is one of defamation . . . [i]n such a situation, we will look to the gravamen of the action." Id. at 334. The court reasoned that when the essence of a claim is defamation, the claim should be subjected to a one-year statute of limitations. Id. at 333.

In contrast, when the essence of the claim relates to an injury to one's economic interests instead of an injury to one's reputation, the one-year statute of limitations period should not apply. See Manning v. Flannery, No. 2:10-CV-178, 2012 WL 1111188, at *17 (W.D. Pa. Mar. 31, 2012) aff'd, 528 F. App'x 141 (3d Cir. 2013)(citing Rolite, Inc. v. Wheelabrator Environmental Sys., Inc., 958 F.Supp. 992, 1011 (E.D. Pa. 1997)).

In Maverick Steel Co., the Superior Court determined that a plaintiff may bring a tortious interference claim in addition to a defamation claim if there are sufficient, non-defamatory facts supporting the tortious interference claim. Maverick Steel Co., 54 A.2d at 356-59. The court ruled that when the tortious

24

interference claim is "separate and distinct" from libel or slander, a two-year statute of limitations applies to those allegations and the tortious interference claim. Id. at 358.

The issue before the Court is thus whether the essence or gravamen of Plaintiffs' allegations sounds in defamation like in Evans, in tortious interference like in Manning, or whether the allegations offer sufficient support to sustain a separate tortious interference claim despite also sounding in defamation, as in Maverick.[8]

In the case at hand, Plaintiffs have alleged that existing and prospective clients, insurance carriers, and various vendors have ceased doing business with Plaintiffs as a result of Defendants' allegedly false and misleading statements. (Second Amended Complaint, ¶¶ 42 and 55-57 (Doc. No. 156)). In addition, Plaintiffs assert that Defendants' allegedly false and misleading statements were made to encourage Plaintiffs' existing and prospective clients to engage in business with Defendants. (Id. at ¶ 31). Plaintiffs thus provide facts asserting an economic or commercial injury to their business, not simply an injury to

---

[8] Notably, while the Lanham Act cause of action for false advertising has been held to have some overlap with defamation claims, the state-law torts of defamation and tortious interference are distinct. Compare College Savings Bank, 919 F. Supp. 756, 764 (discussing overlap between Lanham Act and common law claims of defamation and trade libel) with Evans, 601 A.2d at 333 (discussing differences between Pennsylvania causes of action for tortious interference and defamation).

reputation like the appellants in <u>Evans</u>. The two (2) year statute of limitations under 42 Pa. Const.Stat. § 5524 for tortious interference claims shall apply here.

Based on a fair reading of the Second Amended Complaint, Plaintiffs' tortious interference claims are timely. The statutory period begins to run when "the right to institute and maintain the suit arises." <u>Beauty Time, Inc. v. VU Skin Sys., Inc.</u>, 118 F.3d 140, 144 (3d Cir. 1997)(quoting <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (Pa. 1983)). Plaintiffs therefore must bring their claim within the statutory period beginning "when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." <u>Beauty Time, Inc.</u>, 118 F.3d at 148. The Third Circuit Rule provides that if a statute of limitations argument is raised in a Rule 12 motion, the untimeliness of the claim must clearly appear on the face of the pleading for a dismissal to be granted. <u>Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002).

Plaintiffs filed the Second Amended Complaint on March 17, 2014,(Doc No. 156), replacing the Doe defendants in their First Amended Complaint. <u>See</u> (Doc. No. 9). The pleadings fail to assert when the Plaintiffs first learned of the Moving Defendants' allegedly tortious actions. Moving Defendants also do not state when the statutory period began to run on the Plaintiffs' tortious interference claims. However, Plaintiffs have pled that

they encountered difficulties when attempting to identify the Doe
defendants and that Defendants had gone to great lengths to hide
their true identifies. (Second Amended Complaint, ¶¶ 58-62 (Doc.
No. 156)). Therefore, based on a fair reading of the pleadings,
the Court cannot determine whether Plaintiffs' tortious
interference claims are untimely. Thus, Moving Defendants' Rule
12 motion to dismiss the tortious interference claims as untimely
is denied.

      2.   <u>Sufficiency of Plaintiffs' Tortious Interference
           Claims.</u>

Alternatively, Moving Defendants argue that Plaintiffs have
failed to plead facts to support their tortious interference
claims. Pennsylvania law has long recognized the tort of
intentional interference with contractual relations. <u>Thompson
Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 470 (Pa. 1979). Under
Pennsylvania law, the elements to support a claim for tortious
interference with existing or prospective contractual relations
are: (1) the existence of a contractual or prospective relation
between the complainant and a third party; (2) purposeful action
on the part of the defendant, specifically intended to harm the
existing or prospective relation; (3) the absence of privilege or
justification on the part of the defendant; and (4) the
occasioning of actual legal damage as a result of the defendant's
conduct. <u>See e.g.</u> <u>Fresh Made, Inc. v. Lifeway Foods, Inc.</u>, No.

01-CV-4254, 2002 WL 31246922, at *12 (E.D. Pa. Aug. 9, 2002); Ira
G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d
278, 288-89 (Pa.Super.Ct. 2010) (quoting Strickland v. Univ. of
Scranton, 700 A.2d 979, 985 (Pa.Super.Ct. 1997)). To bring a
tortious interference claim, the federal rules require pleadings
to contain a short and plain statement of the claim, Fed. R. Civ.
P. 8(a)(2), but the plaintiff must provide "more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Twombly, 550 U.S. at 554-55.

> a.   Plaintiffs' Existing Contractual
>      Relationships (Count III).

Plaintiffs have failed to plead sufficient facts to support
their tortious interference with existing contractual
relationships claim. When asserting a claim for interference with
an existing contractual relationship, the complaint must contain
facts to identify the individuals or business with whom the
plaintiff had contractual relations, and identify the alleged
relationships at issue. See e.g., Trivedi v. Slawecki, No. 4:11-
CV-2390, 2012 WL 5987410, at *4 (M.D. Pa. Nov. 28, 2012)("to
withstand a motion to dismiss, Plaintiff must specifically
identify the existence of a contractual relationship with a third
party")(gathering cases); Centennial Sch. Dist. v. Independence
Blue Cross, 885 F. Supp. 683, 688 (E.D. Pa. 1994)(Plaintiffs'
tortious interference with an existing contract claim was

dismissed as plaintiffs failed to identify the contractual
relationships threatened, or the type of contracts allegedly
harmed by the defendants' conduct); ClubCom, Inc. v. Captive
Media, Inc., No. 02:07-CV-1462, 2009 WL 249446, at *12-13 (W.D.
Pa. Jan. 31, 2009)(Counterclaim plaintiff's claim dismissed as it
failed to identify which, if any, existing contracts were
hindered or interfered with by counterclaim defendants.).

Plaintiffs argue that they have plead existence of
contractual relationships with "existing clients", "insurance
carriers" and "various vendors" that provided an economic benefit
to Plaintiffs. (Plaintiffs' Opposition, p. 30 (Doc. No. 174)).
Plaintiffs have pled the names of insurance carriers, National
Life and American Equity Investment Life Insurance Company, who
have been allegedly contacted by Defendant McWilliams. (Second
Amended Complaint, ¶¶ 44-48 (Doc. No. 156)). Though Defendant
McWilliams allegedly sent e-mails using the fictional name "Tammy
Guyton" to these insurance carriers encouraging them to terminate
their business relationships with Plaintiffs, id., Plaintiffs do
not allege that these relationships were terminated or otherwise
damaged as a result. Therefore, the Plaintiffs' pleading is
insufficient to demonstrate the Moving Defendants' conduct
interfered with Plaintiffs' contractual relationship with its
insurance carriers.

As to their other contractual relationships, Plaintiffs have

failed to identify with specificity the "existing clients" or "various vendors" with whom they had contracts. Plaintiffs' pleadings fail to identify the existence of any specific contracts, or the type or nature of business relationships that were interfered with. In fact, Plaintiffs' pleadings failed to give more than vague, generalized information regarding the "existing clients" and "various vendors" who have been interfered with by the Moving Defendants. Since Plaintiffs have amended their original Complaint twice and have had more than two (2) years to plead the specific existing contracts that were interfered with, the Court will grant Defendants motion to dismiss Count III with prejudice.

> b.    Plaintiffs' Prospective Contractual
>       Relationships (Count IV).

Plaintiffs have pled sufficient facts to demonstrate an interference by the Moving Defendants with prospective contractual relationships. Prospective contractual relationships, as compared to existing contractual relationships, are more broad by definition because prospective contracts are more difficult to identify precisely. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997). Allegations of prospective contracts therefore require less specificity than existing contracts for purposes of intentional interference claims. Fresh Made, Inc., 2002 WL 31246922, at *12. For prospective contracts, the Pennsylvania Supreme Court requires something more than a "mere

hope" of a future contract, and the pleadings must suggest there was an objectively reasonable probability that a contract would come into existence. <u>See</u> <u>Thompson Coal,</u> 412 A.2d at 471; <u>Schulman v. J.P. Morgan Inv. Mgmt., Inc.</u>, 35 F.3d 799, 808 (3d Cir. 1994). An objectively reasonable probability may occur when it is likely, based on the parties current dealings, that a contract was to occur but for defendants' conduct. <u>Fresh Made, Inc.</u>, 2002 WL 31246922, at *12.

Plaintiffs have pled that potential customers[9] were cancelling "follow-up appointments" with Plaintiffs based on what they read on the website. (Second Amended Complaint, ¶ 54 (Doc. No. 156)). Additionally, Plaintiffs have pled that at least 30-50 people decided not to do business with Plaintiffs or cancel their second appointment because of the contents of the website. (<u>Id.</u>) These factual pleadings indicate at the very least that potential customers were interested in Plaintiffs' products or services, scheduled second appointments, and then cancelled these appointments in view of the contents that Defendants had posted on their website. At least in regard to the potential customers who cancelled their second appointments, Plaintiffs have shown that they possessed more than a "mere hope" of a contractual

_____

[9] Plaintiffs have not, however, alleged the existence of prospective contractual relationships with vendors, insurance carriers, or any third parties other than prospective clients.

relationship that came to naught. Therefore, Plaintiffs have stated a claim for intentional interference with prospective contractual relations.

   C.   Civil Conspiracy (Count V).

Plaintiffs have pled facts to support a civil conspiracy claim. Pennsylvania recognizes actions for civil conspiracy and requires plaintiff to allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Chantilly Farms, Inc. v. W. Pikeland Twp., No. 00-CV-3903, 2001 WL 290645, at *12 (E.D. Pa. Mar. 23, 2001) (quoting Smith v. Wagner, 588 A.2d 1308, 1311-12 (Pa.Super.Ct. 1991)). Proof of conspiracy requires evidence of malice, or that the purpose of the conspiracy was to injure the plaintiffs. Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997).

Plaintiffs have pled that the Moving Defendants, along with Defendant Brennan, planned and executed the launch of the website to post information about Plaintiffs. (Second Amended Complaint, ¶ 27 (Doc. No. 156)). Plaintiffs assert that the purpose of the website was to get Plaintiff Cannella off the air and out of business. (Id. at ¶ 36). Plaintiffs allege that the Moving

Defendants along with Defendant Brennan utilized the website to execute personal vendettas against Plaintiffs and discourage Plaintiffs' potential and existing customers from engaging in business with Plaintiffs. (Id. at ¶ 31). The Court finds this allegation to raise a reasonable inference that Defendants acted out of malice. Finally, Plaintiffs allege that the Moving Defendants and Defendant Brennan's actions unlawfully interfered with Plaintiffs' existing and prospective contractual relations, and as a result, Plaintiffs have suffered loss of revenue and other damage. (Id. at ¶¶ 50-57 and 93-101). Therefore, Plaintiffs have specifically pled facts to support their civil conspiracy claims.[10]

    D.    Unfair Competition (Count VI).

    The parties do not dispute that under Pennsylvania law, "the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in

---

        [10] Moving Defendants also argue that Plaintiffs' civil conspiracy claims are barred by the applicable statute of limitations. However, under Pennsylvania law, the statute of limitations for civil conspiracy is the same as the statute of limitations for the underlying tort. Kingston Coal Co. v. Felton Mining Co., Inc., 690 A.2d 284, 287 (Pa.Super.Ct. 1997); Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974). Therefore, as explained supra, since Plaintiffs' tortious interference claims appear timely based on a fair reading of the pleadings, so too are Plaintiffs' civil conspiracy claims.

interstate commerce." <u>Night Vision Sys., LLC v. Night Vision</u>
<u>Depot, Inc.</u>, No. 07-CV-4808, 2011 WL 3875515, at *9 (E.D. Pa.
Sept. 2, 2011)(citing <u>Pa. State Univ. v. Univ. Orthopedics, Ltd.</u>,
706 A.2d 863, 870 (Pa.Super. 1998)). Since the Court found that
Plaintiffs' Section 43(a) Lanham Act claims were sufficiently
pled, the Court also finds Plaintiffs unfair competition claim to
be sufficiently pled.

E.    <u>Subject Matter Jurisdiction Over Plaintiffs' State Law</u>
      <u>Claims.</u>

In view of Plaintiffs' sufficient pleading of a Section
43(a) violation of the Lanham Act, Moving Defendants' argument
that the Court lacks subject matter jurisdiction regarding
Plaintiffs' state law claims is denied. Plaintiffs' claim under
Section 43(a) of the Lanham Act is a federal cause of action
arising under federal law in accordance with 28 U.S.C. § 1331.
The Court may therefore exercise supplemental jurisdiction over
the Plaintiffs' remaining state law claims arising from the same
case or controversy as the federal claim under 28 U.S.C. § 1367.
Therefore, the Court retains subject matter jurisdiction over the
Plaintiffs' related state law claims that have not been
dismissed.

## IV. Conclusion

For the reasons set forth above, the Moving Defendants'
Motion to Dismiss (Doc. No. 171) is granted in part and denied in

part.

An Order follows.